UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Cause No. 4:15CR00163 RWS/NCC |
| v. ) | |
| ) | |
| DAVID MICHAEL HAGLER, ) | |
| ) | |
| Defendant. ) | |

## MOTION TO SUPPRESS EVIDENCE

Comes now the defendant, by counsel, and pursuant to the Fourth Amendment of the United States Constitution and Federal Rules of Criminal Procedure 12(b)3 and 41, and moves this Honorable Court to quash the Search Warrants issued on March 24-25, 2015 and April 3, 2015, and to suppress all evidence seized in the above entitled cause or in the alternative for a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978). In support of this motion the defendant states as follows:

### I. Factual Background

1. On March 24, 2015, Judge David D. Noce authorized a felony Criminal Complaint and Arrest Warrant for Defendant. Additionally, FBI Agent Ankur Patel applied for and was subsequently granted search warrants authorizing the search and seizure of evidence from both of Defendant's residences located at 1139 and 1143 Howell, St. Louis, Missouri 63147.

2. The Criminal Complaint filed on March 24, 2015 charged Defendant with the following listed charges: 26:5861C.F, POSSESSION OF AN UNREGISTERED "SHORT-BARRELED" SHOTGUN AND UNREGISTERED MACHINEGUN; 18:922G.F, POSSESSION OF FIREARMS AND AMMUNITION BY AN UNLAWFUL USER OF

CONTROLLED SUBSTANCES; 18:922G.F, POSSESSION OF FIREARMS AND AMMUNITION BY PERSON CONVICTED OF MISDEMEANOR CRIME OF ASSAULT WITHIN DEFINITION OF A CRIME OF DOMESTIC VIOLENCE; 18:922K.F, POSSESSION OF FIREARM WITH SERIAL NUMBER REMOVED, OBLITERED OR ALTERED.

2. On March 25, 2015, Defendant was taken into custody by law enforcement agents without incident. At the time of Defendant's arrest he did not have any weapons on him nor was he uncooperative with the law enforcement agents; however, he did ultimately invoke his constitutional privilege against self-incrimination. Subsequent to Defendant's arrest, FBI Agents then applied and were granted a search warrant for Defendant's vehicle, wherein they seized a Glock model 22, .40 caliber handgun, bearing S/N HNU392.

3. Then, on March 26, 2015, Agents executed the afore-referenced search warrants on Defendant's properties listed above. On that same day, according to the return of inventory the government seized the following items:

- A. Thirty-four (34) firearms of various makes, models and calibers, including but not limited to a Glock, Model .22, 40 caliber pistol with S/N HER567 that had been reported as lost by the Illinois State Police Department;

- B. Unknown amount of various ammunition (in excess of 890 rounds) for different makes, models and calibers of firearms;

- C. Paper with law enforcement names and numbers;

- D. One (1) box containing drug residue and paraphernalia, along with possible marijuana seeds in a bag;

- E. Ballistic vest; and,

- F. One (1) Kyocera brand smartphone (which had been found on Defendant at the time of his arrest);

4. On April 3, 2015, FBI Agent Ankur Patel applied for and was subsequently granted a search warrant authorizing the search of the electronic data on Defendant's previously seized smartphone.

5. On April 8, 2015, Defendant was indicted by a federal grand jury with one count of possession of a machinegun, in violation of 18 U.S.C. Section 922(o).

## II. Argument

1. There is no dispute that the primary basis of the information leading to the issuance of these warrants was based upon statements made to law enforcement by two confidential informants. These informants made numerous allegations and claims as to the "dangerousness" of Defendant wherein the vast majority were shown to be false or were uncorroborated by an independent investigation conducted by law enforcement.

2. The defendant has two main challenges to the search warrant. First, the warrant does not contain sufficient probable cause on its face to justify the search of Mr. Hagler's residences, as the information provided from the government to the Magistrate was not corroborated and largely based on unverified alleged statements made by Defendant to informants. Finally, the affidavit requesting the search warrant contained materially false and misleading statements that undermine the validity of the search warrant and require a hearing pursuant to *Franks v Delaware*, 438 U.S. 154 (1978) and thereafter, suppression of the evidence based on insufficient probable cause.

3. The application and affidavit for search warrant appears to be complex and comprehensive. However, upon a closer inspection of the document gaping holes in the affidavit become apparent.

## A. Probable Cause

1. According to the search warrant affidavit, there were two confidential sources (CS's) who were providing information to the investigating agents since mid- February 2015.

2. The search warrant affidavit states that CS#1 has an opinion that Defendant poses a substantial threat to law enforcement and others. Then, it states that because Defendant hates his ex-wife (whom he divorced 30 years ago), that Defendant generates electricity by way of solar panels or gasoline generators and gets his water for his house from a large container mounted in the bed of his truck- that these actions somehow make him a threat to the community. Defendant is described by CS#1 as being an anarchist who holds "extreme" anti-government and anti-law enforcement views, especially since the recent events in Ferguson. Surely not an uncommon sentiment in north St. Louis City, as of late.

3. However, the search warrant affidavit states CS#1 additionally claims that Defendant routinely practices escaping from handcuffs and hides a key on his person. Not illegal acts necessitating rationale for a search warrant. CS#1 claims that Defendant has put metal plating up against the interior walls of his primary residence to serve as protection for a gunfight with law enforcement. Again not an illegal act, especially in light of the fact that Defendant lives in a dangerous neighborhood in north St. Louis City where there have been numerous drive by shootings.

4. Years ago CS#1 had seen a marijuana grow operation in Defendant's house—but nothing stated that there was one there at the time of the request for a search warrant nor was there any independent corroboration that supported such a belief.

5. The search warrant affidavit claims that CS#1 informed officers that Defendant had a publicly available book depicting a booby trap and Defendant made a comment that he would like

to see a policeman step on one of those. Not an illegal act or comment to make according to the First Amendment. There was no evidence compiled by law enforcement that Defendant had actually made one of these booby traps.

6. The search warrant also stated that CS#1 had seen several weapons at Defendant's residences- but nothing was ever stated that any of the weapons, at that time, were in any way illegal. CS#1 claims that Defendant had "previously" informed him that he had bought a "trigger kit" for one of his AR-15 rifles and converted it to a fully automatic weapon; however, the affiant does not state "when" this comment was made and whether Defendant was currently in possession of one of those automatic weapons.

7. The last topic CS#1 shared with the search warrant affiant pertains to the hatred Defendant has for his ex-wife whom he had divorced 30 years prior. CS#1 makes a claim that Defendant wanted to "take her out" and that Defendant had previously killed an individual and disposed of the body. The time frame of the latter statement is unknown and the affiant did not corroborate this information whatsoever.

8. Although, several of these claims made by CS#1 are disturbing- none of these together or separately give sufficient probable cause to authorize the search of a person's home- especially since they have not been corroborated in any way.

9. The search warrant affiant further states that there was a second confidential source listed as CS#2. CS#2 was able to record some conversations with Defendant, but on other occasions when the recorder would not function- CS#2 would inform the law enforcement agents what Defendant allegedly said in their meetings. Conveniently enough, the conversations that were not recorded are listed in the search warrant affidavit as being the most damning to Defendant.

10. Specifically, CS#2 was able to record Defendant stating that he has sold a number of guns and ammunition to friends at great prices. However, this is not illegal as federal law allows a person to transfer or acquire a firearm to or from an unlicensed resident of his/her State, if he/she does not know or have reasonable cause to believe the person is prohibited from receiving or possessing firearms. Federal Law sets the age of ownership for a Long Gun at 18 and a Handgun at 21.

11. Then, at a time when CS#2 *could not* record Defendant this is when Defendant made the most incriminating statement of all in that he would come by the residence of CS#2 and modify his Glock pistol to discharge multiple rounds with a single trigger pull. However, there is no follow-up statement made by CS#2 as to whether or not Defendant actually did come over and do said illegal act.

12. Then, at another occasion when CS#2 was *unable* to record Defendant- this is when Defendant stated that he had actually modified a firearm to discharge two rounds with a single trigger pull. Apparently, Defendant had demonstrated the weapons ability to do so to CS#2. This was also apparently the same time where Defendant had informed CS#2 that he had sawed off the barrels of two of his shotguns and had removed their serial numbers.

13. The next two times CS#2 *was able to* record Defendant, he was informed by Defendant that he had fixed his firearm so it would no longer fire a two round burst. And he informed CS#2 of the ease of finding certain topics on the publicly available internet.- such as how to make a firearm automatic. Again, not against the law.

14. Then, on March 17, 2015, CS#2 was in Defendant's residence and saw that he had firearms and ammunition by his bed—but none of it was described or listed as being illegal in any way.

15. The sole basis for searching both of Defendant's residences, vehicle and smartphone is based on these statements made by the confidential sources that amount to illegal activities that necessitates the issuance of a search warrant without some sort of independent corroboration or any type of investigation conducted by law enforcement.

16. There was no verification provided to the court to confirm that Defendant had actually done the things the confidential sources say Defendant said he did. There is a complete absence of the corpus delecti necessary to support these claims.

In sum the Government merely suspected this Defendant had done something illegal- but as is depicted above- there has been no independent corroboration of alleged illegal acts and the comments Defendant supposedly made are disturbing but are not illegal to utter. Mere suspicion does not establish probable cause.

### B. Lies, False and Misleading Statements, and Reckless Omissions

1. The defendant is requesting a hearing pursuant to *Franks v. Delaware*.

2. The search warrant submitted to the Magistrate in this case contained false and misleading statements, material omissions and factual untruths, which taint the search warrant to such an extent that the only remedy under the law is to quash the herein-referenced search warrant.

3. The search warrant affidavit in this matter stated that the confidential informants notified the investigating law enforcement agents of the following allegations about Defendant:

a) Defendant had underground tunnels connecting one of his homes to the other— according to the discovery provided to Counsel this is not true.

b) Defendant had various booby traps set up in his house and yard and in flower pots by his front door that had trip wires. That some of these booby traps contained tannerite and

blasting caps. That Defendant had pipe bombs, either fully constructed or simply the components together to make said pipe bombs. According to the discovery provided to Counsel not one of these allegations was found to be true.

      c)      Defendant had guns hidden all throughout his house in secret panels—according to the discovery provided to Counsel this is not true.

      d)      Defendant had steel plates lining the front walls of his house so that he could be protected if he were to get into a shootout with the police—according to the discovery provided to Counsel this is not true.

      e)      Defendant was growing marijuana in his basement and he was a habitual drug user—according to the discovery provided to Counsel, law enforcement agents did not find any functional marijuana grow operation in either of his residences nor did they conduct a drug test or any sort of field tests to determine if Defendant was under the influence of drugs when he possessed firearms.

      f)      Defendant possessed illegal firearms and ammunition, including but not limited to a saw offed shotgun, a machine gun, a firearm that had the serial number altered or obliterated, and armor piercing bullets.  It is Counsel's understanding that *none* of these items were found in Defendant's possession at the time of his arrest nor is there any proof other than these confidential informants' uncorroborated statements that these items ever existed or were ever in Defendant's alleged possession.

      g)      Defendant wanted to kill police officers at a funeral, shot at a police officer as he was hidden from the side of the road, that he had plans to rob a bank, that he had literature pertaining to the Ku Klux Klan, and that he had had some sort of para-military training in Arkansas-- according to the discovery provided to Counsel, law enforcement agents did not find

anything in Defendant's residence that supported these allegations. These false statements were made by confidential informants that had also provided the police with the information referenced above that was shown to be utterly false.

4. In sum, based on misleading, false and fraudulent statements made in the affidavit, as well as, the underlying probable cause issues the defense believes the affidavit is so tainted it cannot legitimately establish probable cause.

5. Defense counsel has personally conferred with opposing counsel about the issues raised in this motion and memorandum of law. Counsel maintains a good faith belief that the information or evidence that exists as a result of the above-referenced search warrant should be suppressed by this court.

WHEREFORE, the Defendant, having proper standing before this Court, requests that an order be entered suppressing any and all evidence seized from Defendant's vehicle, smartphone and residences due to these search and seizures being unreasonable and in violation of the Fourth Amendment to the United States Constitution, or in the alternative, that a *Franks* hearing be conducted in this matter.

    Respectfully submitted,

    FRANK, JUENGEL & RADEFELD,
    ATTORNEYS AT LAW, P.C.

    By: */s/ Matthew A. Radefeld*
    MATTHEW A. RADEFELD (#52288MO)
    Attorneys for Defendant
    7710 Carondelet Ave., Suite 350
    Clayton, Missouri 63105
    (314) 725-7777

## CERTIFICATE OF SERVICE

I hereby certify that on May 11, 2015, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following.

Mr. John Ware
Asst. United States Attorney
111 South Tenth Street, 20th Floor
St. Louis, Missouri, 63102

                                                                              By: */s/ Matthew A. Radefeld*
                                                                              MATTHEW A. RADEFELD