UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) |
| | ) No. 4:15 CR 163 RWS/NCC |
| v. | ) |
| DAVID MICHAEL HAGLER, | ) |
| Defendant. | ) |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

COMES NOW Richard G. Callahan, United States Attorney for the Eastern District of Missouri, and John J. Ware, Assistant United States Attorney for said District, and responds to Defendant's Motion to Suppress Evidence, as follows:

**FACTS**

On March 24, 2015, Federal Bureau of Investigations Special Agent Ankur Patel applied for search warrants for residential properties owned by defendant at 1139 and 1143 Howell, St. Louis, Missouri by submitting a single affidavit. The search warrants were approved by United States Magistrate Judge David Noce and were executed on March 26, 2015. Multiple firearms and thousands of rounds of ammunition were discovered.

On March 25, 2015, defendant was arrested pursuant to a warrant also authorized by Judge Noce. Defendant was arrested at a work location. Among defendant's personal property seized from his person at the time of arrest was a Kyocera smartphone.

Also on March 25, 2005, Federal Bureau of Investigation Task Force Officer and Deputy United States Marshal, Matthew Liefer, applied for a search warrant for defendant's vehicle, a Chevrolet Astro van, which defendant had driven to work on that day. The affidavit submitted by Deputy Liefer contained large portions of the affidavit submitted by Agent Patel for the

residences on Howell.  Again Judge Noce authorized the warrant and it was executed that day. Of primary importance, a Glock 9mm pistol with ammunition was discovered under the front seat of the van.

On April 13, 2015, Agent Patel applied for a search warrant for defendant's Kyocera smartphone, submitting an affidavit that contained large portions of his affidavit submitted to obtain warrants on defendant's residence.

With the understanding that defendant is contesting all four search warrants, since the warrants for defendant's phone and vehicle largely incorporated Agent Patel's original affidavit for the residences, the Government will address its analysis to the original affidavit, and by reference now, asserts the same arguments to the two latter affidavits.

## **LEGAL ANALYSIS**

As an initial matter, defendant claims that the search warrant issued for his residences were not supported by probable cause.

"The existence of probable cause depends on whether, in the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005).  Great deference should be given to the issuing judge's determination, but only information within the four corners of the affidavit should be considered.  Id.

"Where probable cause depends upon information supplied by an informant, the core question is whether the information is reliable." United States v. Dukes, 758 F.3d 932, 937 (8th Cir. 2014).  "In assessing such reliability, [the] court considers several factors, such as (1) whether officers conducted a face-to-face interview with the informant, (2) the level of detail

2

included in the information provided to law enforcement by the informant, and (3) whether law enforcement independently corroborated any of the information provided by the informant." United States v. Cowling, 648 F.3d 690, 695 (8th Cir. 2011).

In the instant case, the affidavit informs of multiple meetings with the informants over more than a month.  United States v. O'Dell, 766 F.3d 870, 875 (8th Cir. 2014) (known, as opposed to anonymous, informants have long been given more credence, "For one thing, they can be held responsible if the allegations turn out to be fabricated").  Both informants gave extremely detailed reports to agents regarding their interactions with Hagler, much of which were recorded, either audial or visual, which the agents reviewed.  United States v. Keys, 721 F.3d 512, 518 (8th Cir. 2013) (receipt of consistent information from two separate sources is a form of corroboration).  Through these recordings, much of the informants' information was corroborated.  If information from an informant is shown to be reliable because of independent corroboration, then it is a permissible inference that the informant is reliable and that therefore other information that the informant provides, though uncorroborated, is also reliable."  United States v. Williams, 10 F.3d 590, 593 (8th Cir. 1993).  Given these circumstances, and contrary to defendant's contention, the informant information was reliable and corroborated.  See United States v. Morrison, 594 F.3d 626, 632 (8th Cir. 2010) (corroborated informant information negates the crucialness of reliability).

Defendant's focus on information within the affidavit concerning his activities that are disturbing, but not, in and of themselves, illegal is inapposite.  The question is whether there was a fair probability that defendant was unlawfully in possession of firearms as specifically listed on the Application for Search Warrant.  That defendant shouldn't have been in possession of any

3

firearm at all was clearly established due to defendant's prior conviction and as a drug user. See United States v. Thurman, 625 F.3d 1053, 1056 (8th Cir. 2010). Defendant doesn't appear to contest that probable cause was established as to his possession of firearms.

The affidavit also sufficiently established cause to search for an illegal sawed off shotgun based on informant observation. In Fagnan v. City of Lino Lakes, Minn., 745 F.3d 318 (8th Cir. 2014), police officers, who had been invited into defendant's residence along with firefighters to search for a gas leak, observed two firearms that appeared to be under the minimum permissible length. After the officers left when no gas leak was found, they obtained a search warrant based on what they saw. The court, in upholding the sufficiency of the warrant stated:

> The officers noticed that two guns in Fagnan's cabinet looked too short. The requirement that the guns' "incriminating nature" be "immediately apparent" does not mean an officer must know the items are contraband. United States v. Garner, 907 F.2d 60, 62 (8th Cir. 1990). Rather, the officer needs only "'probable cause to associate the property with criminal activity.'" Id. (quoting Texas v. Brown, 460 U.S. 730, 741-42, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983)). "Probable cause demands . . . only that the facts available to a reasonably cautious [person] would warrant a belief 'that certain items may be contraband' . . . " Id.

Fagnan at 323.

Here, it was reasonable for CS#2 to believe that the shotgun was illegally short in length without the ability to precisely measure; if the weapon was any shorter, in fact, it would have been illegal. For the same reasons, there was probable cause to search for weapons with obliterated serial numbers based on CS#2's unaided observations. Finally, the affidavit was replete with information concerning defendant's modification of his Glock into a machinegun; there can be no serious dispute as to probable cause to search for an unregistered machine gun. In short, the affidavit contained sufficient probable cause to issue the warrants to search in this case.

Defendant, having failed to justify suppression of all evidence obtained by the search warrants, alternatively seeks a hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978). Defendant claims that several of the statements made by the two confidential informants to law enforcement agents and included in the affidavit were false.

"To obtain relief under Franks, a defendant must first demonstrate that the law enforcement official deliberately or recklessly included a false statement, or omitted a truthful statement from his warrant affidavit." United States v. Mashek, 606 F.3d 922, 928 (8th Cir. 2010) (quotations omitted). "[I]f the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires a hearing be held at the defendant's request." United States v. Gonzalez, 781 F.3d 422, 430 (8th Cir. 2015); United States v. Reinholz, 245 F.3d 765, 774 (8th Cir. 2001). "Allegations of negligence or innocent mistake will not suffice to demonstrate a recklessness or deliberate falsehood." Mashek at 928 (citing Franks, 438 U.S. at 171). "In determining if 'an affiant's statements were made with reckless disregard for the truth,' the test 'is whether, after viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.'" United States v. McIntyre, 646 F.3d 1107, 1113-14 (8th Cir. 2011) (quoting United States v. Butler, 594 F.3d 955, 961 (8th Cir. 2010)). A showing of deliberate or reckless falsehood is not lightly met and requires a defendant to offer specific allegations along with supporting affidavits or similarly reliable statements. Gonzalez at 430.

Defendant has not met his burden with regard to either prong of Franks. Defendant claims that several of the statements made by the two confidential informants to law enforcement agents and included in the affidavit were false. Defendant's arguments ignore a substantial

5

volume of information in the affidavits that establish probable cause, regardless of any alleged imperfections. There was more than ample probable cause to support the warrants even if the allegedly incorrect or omitted information were corrected or supplied. Thus, defendant is not entitled to a Franks hearing. Each of defendant's alleged defects in the affidavits are addressed below in specific detail, but in general, they do not establish that the informants gave false information, that the affiant recklessly included false information, or that the alleged defects were fatal to probable cause.

In his motion, defendant does not specifically cite the statements he contests but gives generalized summaries. This response attempts to identify the specific passage at issue so a proper analysis of its veracity can be made. This response has subparagraphed each contention to mirror defendant's motion in part II., B., 3. starting on page 7.

a) **CS#1 related that Hagler has dug an underground tunnel, accessible through the basements of the residences, that allows him undetected passage between them.** Affidavit paragraph 8.

Defendant correctly notes that no underground tunnel was discovered at the time of the execution of the warrant. Without conceding that the affiant recklessly[1] included a false statement, the Government is confident that this statement could be eliminated from the affidavit and probable cause would still remain.

b) **CS#1 has in the past observed a copy of the "Anarchist Cookbook" inside 1143 Howell which was opened up to a section that described the construction of a foot tripped booby trap. The device is activated when stepped on and discharges a shotgun**

---

[1] The Government assumes that defendant is not alleging that Agent Patel knew that there was no tunnel at the time he applied for the warrant and therefore "deliberately" included a false statement.

6

**shell up through the victim's foot.  Hagler commented he "would love to see a policeman walk on one of these."  Affidavit paragraph 10.**

**CS#2 advised that in recent and historical encounters with Hagler, Hagler frequently told CS#2 he builds and possesses explosive devices.  On one visit to the primary Hagler residence, CS#2 observed a string (tripwire) that ran across the inside of the front door to the structure.  Hagler advised CS#2 it was "tied to explosives."  Approximately three months ago, CS#2 observed two pipe bombs on a desk in the bedroom at the Hagler primary residence.  CS#2 described the devices as short pieces of metal pipe with metal caps on both ends.  Hagler informed CS#2 he was going to "mix up" five gallons of tannerite, he (Hagler) could detonate with a blasting cap.[2]  Hagler told CS#2 that he had tannerite in the flower pots on the front porch of his home, which he would detonate with gunfire if law enforcement ever came to his home.  During another recent encounter, Hagler made a request of CS#2, to "rob a bank" with him (Hagler).  CS#2 advised that Hagler likes to modify weapons and that Hagler recently modified a Glock handgun which shoots three to five round burst on every trigger pull.  Hagler showed the CS#2 that modified Glock and demonstrated its multiple burst capabilities two weeks ago.  Hagler has also modified the serial numbers on his guns.  Hagler recently found a Glock pistol on the side of a road.  Hagler told CS#2 that he was going to change the serial number on the gun.  He has a tap set to print a new serial number on a clean slide.  Affidavit paragraph 16.**

---

[2] Tannerite is the brand name of a binary explosive marketed primarily for making exploding targets for firearms practice. It is a patented combination of ammonium nitrate (an oxidizer) and aluminum powder (a fuel) that is supplied as two separate powders that are mixed and shaken to produce an explosive. The combination is relatively stable when subjected to forces less severe than a high-velocity bullet impact, such as a hammer blow, being dropped, or impact from a low-velocity bullet or shotgun blast.  Because it is sold as two separate powders, it can be transported and sold in many places without the legal restrictions that would otherwise apply to explosives.

7

Defendant claims these statements to be untrue because no booby traps or pipe bombs were discovered in the search. However, the statement of CS#1 is that Hagler discussed booby traps, not that he saw one. As to CS#2, he saw a tripwire on one visit, it was Hagler who stated it was tied to explosives. Given that CS#2 didn't see the tripwire thereafter, it is not surprising that no such thing was found in the search. Nor is it surprising that no pipe bomb was discovered as CS#2 had seen them 3 months ago. Any discussion of tannerite was made by Hagler and CS#2 didn't allege that he observed tannerite. Defendant has failed to make even a superficial demonstration of the falsity of these statements.

c) **Hagler bragged about having two "throw down" guns stored in hidden compartments within the walls of the residence.** Affidavit paragraph 11.

Again, this statement relates what Hagler told CS#1; the failure to find a secret compartment in the walls of Hagler's residence does not prove CS#1 a liar (and it should be noted that over twenty firearms and a secret compartment in the basement were discovered in the search).

d) **CS#1 has in the past observed metal plating up against the front interior walls and windows of Hagler's primary residence (1139 Howell). Hagler stated the plates were in place to serve as ballistic protection for a gunfight with law enforcement.** Affidavit paragraph 8.

Again defendant has deliberately misread the passage to claim CS#1 was lying as officers found no steel plates in the residence. The statement clearly states "in the past," inferring that Hagler had removed them at some point. The reason for their placement was given by Hagler, not CS#1.

8

e) **CS#1 described Hagler as a routine abuser of marijuana who once had an indoor grow operation in the residence located at 1143 Howell.** Affidavit paragraph 9.

The Government fails to see how this statement could be construed as false. Agents discovered the remains of an indoor marijuana grow operation behind a false wall in Hagler's basement and Hagler admitted to pretrial officers, and others, that he was a marijuana user.

f) **During one of CS#1's visits to Hagler's primary residence, CS#1 observed inside the residence two AK-15 rifles, two AK-47 rifles, two SKS rifles, a number of shotguns, at least ten handguns, a sniper-styled rifle and over 10,000 rounds of various calibers of ammunition.** Affidavit paragraph 11.

**During the first week of February 2015, CS#2 was in the primary residence of Hagler and observed on the only bed: two SKS rifles, two AR-15 rifles, two high powered rifles, two sawed-off pistol grip shotguns and approximately twelve different handguns. CS#2 described one of the sawed-off shotguns as a pump action firearm, being painted black with no visible serial number. The butt stock had been fashioned into a pistol grip and the barrel had been substantially reduced in length, to the point CS#2 believed the weapon to be illegal.** Affidavit paragraph 14.

Agents discovered all of these types of weapons in the search. The sawed-off shotgun that was reduced in length which CS#2 <u>believed</u> was illegal, was only just long enough to be legal. The Glock which had been modified to a machinegun was recovered, but as Hagler stated after his arrest, wasn't modified at the time of recovery. Defendant complains that no armor piercing bullets were found in the search, but there is no reference to such in the affidavit.

9

g) **Hagler has commented to CS#1 he would like to kill multiple police officers and even discussed scenarios to accomplish the task such as attacking at a police funeral (church or cemetery), or attacking a Back Stoppers or Crime Stoppers event, or attacking a memorial mass for law enforcement officers.** Affidavit paragraph 10.

**Hagler then commented to CS#2 that he (Hagler) could sit on the side of the road, shoot an unsuspecting cop and nobody would even know who did it.** Affidavit paragraph 15.

Defendant claims that because there was no physical evidence discovered supporting the statements made by Hagler, the CSs must be lying about Hagler having made them. Again, the logic escapes the Government. Nor is there any reference to Ku Klux Klan literature or para-military training in the affidavit.

Defendant has failed to demonstrate that either informant made a false or misleading statement, let alone the swearing agent. This falls woefully short of the <u>Franks</u> test for establishing the need for a hearing.

## CONCLUSION

As the search warrants were supported by probable cause and defendant has failed to demonstrate the need for a <u>Franks</u> hearing, defendant's motions should be denied.

Respectfully submitted,

RICHARD G. CALLAHAN
United States Attorney

 /s/ John J. Ware
JOHN J. WARE, #40880MO
Assistant United States Attorney
111 South 10th Street, Room 20.333
St. Louis, Missouri 63102

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 18, 2015, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all counsel of record.

          */s/ John J. Ware*
          JOHN J. WARE, #40880MO
          Assistant United States Attorney